## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| DIANA CASSIDY | : | CIVIL ACTION COMPLAINT |
| and | : | |
| DOUGLAS SALAZAR | : | CASE NO. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | |
| | : | |
| CITY OF HACKENSACK | : | |
| and | : | |
| HACKENSACK POLICE DEPARTMENT | : | COMPLAINT & JURY DEMAND |
| and | : | |
| WILLIAM DALEY (individually) | : | |
| and | : | |
| CASSANDRA SESHADRI  (individually) | : | |
| and | : | |
| JACALYN HASHMAT (individually) | : | |
| and | : | |
| DEAN MATTALIAN  (individually) | : | |
| | : | |
| Defendants. | : | |

_____

Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar hereby files this Civil Action Complaint against Defendants, CITY OF HACKENSACK, HACKENSACK POLICE DEPARTMENT, WILLIAM DALEY (individually), CASSANDRA SESHADRI  (individually), JACALYN HASHMAT (individually) and DEAN MATTALIAN  (individually) (collectively "Defendants") and avers the following:

## **INTRODUCTION**

1. Plaintiff, Diana Cassidy ("Plaintiff" or "Ms. Cassidy") complains pursuant to violations of the New Jersey Law Against Discrimination ("NJLAD"), and seeks damages to redress injuries Plaintiff suffered as a result of being subjected to

discrimination by her employer on the basis of her sex and gender, together with sexual harassment, retaliation, hostile work environment, and disparate treatment.

2. Plaintiff, Douglas Salazar ("Plaintiff" or "Mr. Salazar") complains pursuant to violations of the New Jersey Law Against Discrimination ("NJLAD"), and seeks damages to redress injuries Plaintiff suffered as a result of being subjected to discrimination by his employer on the basis of his race, sex and gender, together with sexual harassment, retaliation, hostile work environment, and disparate treatment.

## NATURE OF THE CASE

3. Plaintiff complains pursuant to violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983 and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"); and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination based on race, gender, and retaliation and to remedy violations of Plaintiffs' rights, privileges, or immunities secured by the Constitution and laws, of the United States. Specifically Defendants violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments and laws including Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

4. This action involves a Question of Federal Law under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.

5. The honorable Court also has supplemental jurisdiction over the New Jersey State Law causes of action.

6.    Venue is proper in this district based upon Defendants' principal place of business within Bergen County in the State of New Jersey, within the District of New Jersey, Additionally, the events that give rise to Plaintiff's claim took place within Bergen County in the State of New Jersey, within the District of New Jersey.\

7.    Venue is proper in the District of New Jersey as this matter involves questions under federal law pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.

## PARTIES

8.    Plaintiff, Diana Cassidy is an adult individual with an address for the purposes of service in Cedar Grove, New Jersey.

9.     Plaintiff, Douglas Salazar is an adult individual with an address for the purposes of service in Bellville, New Jersey.

10.   Defendant City of Hackensack is a government entity doing business under the laws of the State of New Jersey with an address for the purpose of service at 65 Central Avenue, Hackensack, New Jersey 07601.

11.   Defendant Hackensack Police Department is a government entity doing business under the laws of the State of New Jersey with an address for the purpose of service at 225 State Street, Hackensack, New Jersey 07601.

12.   Defendant, WILLIAM DALEY (individually) is an adult individual with a business address for the purposes of service listed in the caption above and at 65 Central Avenue, Hackensack, New Jersey 07601.

13.   Defendant, William Daley held supervisory authority over both Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar (collectively "Plaintiffs") at all times relevant

to this civil action complaint.  That is, Defendant, William Daley had the authority to take a tangible employment action against both Plaintiffs by changing the terms or conditions of Plaintiffs employment.

14. Defendant, CASSANDRA SESHADRI (individually) is an adult individual with a business address for the purposes of service listed in the caption above and at 65 Central Avenue, Hackensack, New Jersey 07601.

15. Defendant, Cassandra Seshadri held supervisory authority over both Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar (collectively "Plaintiffs") at all times relevant to this civil action complaint.  That is, Defendant, Cassandra Seshadri had the authority to take a tangible employment action against both Plaintiffs by changing the terms or conditions of Plaintiffs employment.

16. Defendant, JACALYN HASHMAT (individually) is an adult individual with a business address for the purposes of service listed in the caption above and at 65 Central Avenue, Hackensack, New Jersey 07601.

17. Defendant, Jacalyn Hashmat held supervisory authority over both Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar (collectively "Plaintiffs") at all times relevant to this civil action complaint.  That is, Defendant, Jacalyn Hashmat had the authority to take a tangible employment action against both Plaintiffs by changing the terms or conditions of Plaintiffs employment.

18. Defendant, DEAN MATTALIAN  (individually) is an adult individual with a business address for the purposes of service listed in the caption above and at 65 Central Avenue, Hackensack, New Jersey 07601.

19. Defendant, Dean Mattalian held supervisory authority over both Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar (collectively "Plaintiffs") at all times relevant to this civil action complaint. That is, Defendant, Dean Mattalian had the authority to take a tangible employment action against both Plaintiffs by changing the terms or conditions of Plaintiffs employment.

20. Plaintiff, Diana Cassidy is a female who at all times relevant to this Civil Action was employed by Defendants. Defendants were Plaintiff's joint and sole employers.

21. Plaintiff, Douglas Salazar is a male who at all times relevant to this Civil Action was employed by Defendants. Defendants were Plaintiff's joint and sole employers.

## MATERIAL FACTS

22. Plaintiff, Diana Cassidy began her employment for Defendants on or around September 2016 as a Parking Enforcement Officer.

23. Plaintiff, Douglas Salazar began his employment for Defendants on or around April 27, 2002, as a Parking Enforcement Officer.

24. During the course and scope of both Plaintiffs' employment Plaintiffs were subjected to discrimination and harassment in the workplace based upon their sex and gender.

25. Defendants subjected both Plaintiffs to severe and pervasive discrimination and harassment such that Plaintiffs were subjected to a hostile work environment.

26. During the course and scope of both Plaintiffs' employment Plaintiff were subjected to retaliation in the workplace based upon their sex and gender and based upon protected activity when Plaintiff's attempted to report the unlawful discriminatory conduct.

27. Sometime around January 2018, Defendant, William Daley began his position as

both Plaintiffs' direct supervisor.  The position that Defendant, William Daley began was Supervisor of Parking.

28. Almost immediately upon beginning his role as both Plaintiffs direct supervisor, Defendant, William Daley began a campaign of discrimination and harassment in the workplace aimed toward both Plaintiffs and based upon both Plaintiffs' sex and gender.

29. Defendant, William Daley subjected both Plaintiffs to abusive, lewd, pornographic salacious, and obscene comments of a graphic sexual nature.

30. Defendant, William Daley described in detail obscene sex acts that Defendant, William Daley claimed he witnessed the two Plaintiffs' engaged.

31. At no time has Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar ever been romantically involved in any way, shape or form.

32. Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar maintain a professional association through work only.

33. Every accusation of sex-based conduct that Defendant William Daley had leveled against Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar has been 100% false and invented and escalated solely for the purses of subjecting Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar to severe and pervasive discrimination and harassment in the workplace.

34. For years beginning when Defendant, William Daley began his employment for Defendants until the present, Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar have been subjected to daily, nonstop, abuse based upon their sex and gender, and based entirely upon the abusive, lewd, pornographic salacious, and obscene

comments of a graphic sexual nature leveled against Plaintiff, Diana Cassidy and

Plaintiff, Douglas Salazar by Defendant, William Daley.

35. Defendant, Wiliam Daley stated that he witnessed Plaintiff, Diana Cassidy and

Plaintiff, Douglas Salazar "fucking each other in the car on more than one occasion."

36. Defendant, William Daley stated that he witnessed Plaintiff, Diana Cassidy "sucking

his cock in the car while they are supposed to be working" (referring to Plaintiff,

Douglas Salazar).

37. Defendant, William Daley subjected Plaintiffs to sex-based comments of this nature

repeatedly over the years that Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar

worked for Defendant, William Daley so that Plaintiffs work life was permeated with

non-stop questions and comments of a graphic sexual nature.

38. Defendant, William Daley repeated the accusations of witnessing both Plaintiffs in

various graphic sex acts while Defendant, William Daley was both Plaintiffs' direct

supervisor.

39. Defendant, William Daley did not limit the discrimination, harassment and abuse to

which Plaintiffs were subjected to accusations of a graphic sexual and pornographic

nature.

40. Defendant, William Daley also subjected both Plaintiffs to stalking and followed

both Plaintiffs around creating a severe and pervasive hostile work environment for

the Plaintiffs.

41. Defendant, William Daley followed Plaintiffs when Defendant William Daley was

on duty.

42. Defendant William Daley followed Plaintiffs when Defendant William was off duty

and when Plaintiffs were off duty.  This caused severe fear and emotional distress.

43. The Plaintiffs work in a somewhat stressful work environment to begin with as Plaintiff's job is to subject parking violators to ticketing.  And while Plaintiffs have gotten used to dealing with it, Plaintiffs have been subjected to cursing, yelling or threats by the people who are ticketed.

44. Plaintiffs have also been subjected to being followed around by people who they have ticketed.

45. Accordingly, when Plaintiffs noticed that they were being stalked by the same vehicle every day, Plaintiffs became extremely alert and aware of the stalking activity.

46. Plaintiffs then became aware of the fact that the stalking was Defendant, William Daley.

47. At no time did Defendant, Wiliam Daley have the authority, authorization, right, or instruction to follow either Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar around every day.

48. There is not a single conceivable valid explanation for Defendant, Wiliam Daley's stalking conduct other than the intentional harassment of two City of Hackensack employees.

49. Defendant, William Daley was engaged in criminal conduct when he chose to subject Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar to stalking on a daily basis.

50. Defendant, William Daley bragged about his stalking activities to other City employees making comments in words or substance that he was "on-to" Plaintiff,

Diana Cassidy and Plaintiff, Douglas Salazar, and that he was going to "catch"
Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar and that Plaintiff, Diana
Cassidy and Plaintiff, Douglas Salazar "were in for a rude awakening."

51. Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar witnessed Defendant, William
Daley during this stalking activity at least 50 times.

52. Defendant William Daley used City owed vehicles to subject Plaintiff, Diana
Cassidy and Plaintiff, Douglas Salazar to this staking conduct and engaged in this
stalking conduct during times when Defendant, William Daley was on the clock and
paid by the City.

53. Both Plaintiffs reported Defendant, William Daley's illegal stalking conduct and the
sex and gender-based comments and conduct at least 3 times to Defendant Cassandra
Seshadri, who was the Personnel Director at the time of the illegal behavior.

54. Defendant Cassandra Seshadri did nothing to address and remediate the stalking
activity or the sex-based conduct and comments.

55. Defendant Cassandra Seshadri made promises that she would look into it and address
and ameliorate the discrimination and harassment in the workplace.

56. Defendant Cassandra Seshadri promised that at a minimum Defendant, Wiliam
Daley's inappropriate conduct would result in disciplinary action.

57. Defendant Cassandra Seshadri took no steps to investigate, address, or remediate the
discrimination and harassment in the workplace.

58. Defendant Cassandra Seshadri tacit acceptance of Defendant, William Daley's illegal
sexual harassment and stalking, authorized, sanctioned, permitted Defendant,
William Daley to continue the daily abuse.

59. Plaintiffs reported to Defendant Cassandra Seshadri at least three times the daily illegal harassment and the hostile work environment.

60. Defendant Cassandra Seshadri did nothing.

61. Defendant, William Daley should never have been Plaintiffs' supervisor in the first place.

62. Defendant, William Daley did not possess the minimum qualifications required to perform the job for which Defendant, William Daley was hired.

63. Defendant, William Daley came from the Department of Public Works, Parks Department.

64. Defendant, William Daley was awarded the position of Supervisor of Parking without allowing others to even be considered for the position including other City employees who were more qualified and/or qualified, and the public at large.

65. Defendants refusal to consider that Defendant, William Daley was never qualified for the position in the first place led to Defendant, William Daley engaging in sexual harassment and abuse of both the position and of Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar.

66. Defendant Cassandra Seshadri refused to follow any and all commonsense procedures for when employees report illegal sexual harassment or other illegal conduct.

67. Defendant Cassandra Seshadri took no steps to even investigate the extent of the illegal conduct at issue and reported.

68. Defendant Cassandra Seshadri refused to allow the reports to be reduced to writings and filed in Defendant, William Daley's personnel file.

69. Defendant Cassandra Seshadri did everything she could to protect Defendant William Daley which caused the discrimination and harassment to continue and the hostile work environment to be ratcheted up.

70. After Plaintiffs reported the illegal conduct and comments of a graphic sexual nature and the non-stop stalking, the hostile work environment got worse and more hostile.

71. Defendants refusal to investigate and remediate communicated to Defendant, William Daley that his illegal conduct would go unpunished and Defendant, William Daley became even more emboldened and continued to harassment and abuse.

72. Simply put, Defendant William Daily leaned quickly that there was nothing that Plaintiffs could do and nobody that Plaintiffs could report to that would result in consequences for the illegal harassment.

73. Defendant, William Daley began to use a go-between to continue the daily harassment and abuse.

74. Defendant, William Daley reassigned a Parking Enforcement Officer named John Squillace to the position of Parking Liaison.

75. Sometime around 2020, John Squillace began referring to himself as Plaintiffs' supervisor.

76. John Squillace informed Plaintiffs that he had heard that Plaintiffs were engaged in sexual activity.

77. John Squillace reported directly to Defendant, Willim Daley and spoke with Defendant, William Daley, daily, about Plaintiffs and ways to subject Plaintiffs to discrimination, harassment and retaliation.

78. Defendant, William Daley used John Squillace to subject Plaintiffs to discrimination,

harassment and retaliation in the form of changing the terms and conditions of Plaintiffs work environment.

79. All of a sudden, Plaintiffs were instructed to begin writing more tickets.

80. John Squillace stated that Defendant, William Daley wanted and  expected his bonus and that Plaintiffs would be expected to help Defendant, William Daley obtain his bonus by "writing more tickets."

81. Plaintiffs were subjected to daily ridicule and abuse directly after Plaintiff reported Defendant, William Daley's sexual harassment and stalking.

82. Plaintiffs were subjected to changes in the terms and conditions of their employment directly after Plaintiff's reported Defendant, William Daley's discrimination and harassment, sex-based comments and stalking.

83. The ridicule, abuse, and new conditions of employment were part of the campaign of retaliation to which Plaintiffs were subjected by Defendant, William Daley.

84. Directly after Plaintiffs' reported Defendant, William Daley's illegal, nonstop, daily harassment and abuse, Plaintiffs were subjected to daily instructions to "write more tickets."

85. Plaintiffs were also subjected to verbal disciplinary action for taking too many breaks.  The breaks that Plaintiffs took were the same breaks that Plaintiffs had been authorized to take for years.  There was no change in the amount or time of Plaintiffs' breaks.

86. Plaintiffs were also subjected to verbal disciplinary action for writing too many warnings.

87. Plaintiffs were encouraged by departmental policy to write warnings.  This was a

public policy decision to help the public understand better the City's parking rules and regulations and to give taxpayers an opportunity to avoid ticketing.

88. Defendants ignored the public policy implications involved in verbal discipline for writing too many warnings and continued to admonish and verbally ridicule Plaintiffs for not doing their jobs and writing too few tickets, too many warnings and taking too many breaks.

89. This verbal discipline was dulled out on a daily basis such that Plaintiffs had to inform Defendants and John Squillace that they were being too aggressive in their harassment.

90. This type of harassment continues to the present and is directly linked to Plaintiff's reports of discrimination and harassment in the workplace and attempts to remediate and ameliorate Defendant, Wiliam Daley's sexual harassment and stalking.

91. There were many times when John Squillace called Defendant, William Daley in the presence of Plaintiffs and Plaintiffs heard Defendant, William Daley subjecting Plaintiffs to verbal discipline that was retaliatory in nature.

92. Defendant William Daley continued to issue verbal discipline asking Plaintiffs, "why aren't you doing your job" on multiple occasions.

93. None of the instances when Defendant, William Daley questioned whether Plaintiffs doing their job were based on legitimate supervisory issues.  At no time did Plaintiffs not do their job.

94. At all times Plaintiffs performed their duties and responsibilities with the excellence and experience that Plaintiffs have displayed over the years of their employment.

95. Accordingly, Defendant, William Daley took to coming up with issues in order to

justify the harassment and abuse of Plaintiffs.  Defendant, William Daley therefore admonished Plaintiffs by instructing Plaintiffs to engage in inappropriate ticketing.

96. Examples of inappropriate ticketing include instructions for Plaintiffs to engage in ticketing of City vehicles, even the vehicles of marked police officers.

97. Defendant, William Daley instructed Plaintiffs to begin ticketing marked police officer vehicles and verbally disciplined Plaintiffs when they explained that they were not permitted to issue such tickets according to specific instructions given during training.

98. Still, Defendant, William Daley ridiculed Plaintiffs saying, "why can't you just do your job."

99. Another example occurred when Defendant, William Daley instructed Plaintiffs to issue tickets when their was not proper signage.  According to departmental policy, tickets must be justified with proper signage so that the person in violation knew or should have known not to park there.  Defendant, William Daley did not care about proper signage and instructed Plaintiffs to engage in illegal ticketing, asking Plaintiffs, "why can't you just do you job" when Plaintiffs did not issue tickets without proper signage.

100. Plaintiffs informed Defendant, William Daley that they were not permitted to issue certain tickets.  Specifically, the issue was issuing tickets to people who had no reason to even know there was a potential violation.  Defendant, William Daley issued instructions stating that he did not care and to issue the parking tickets anyway.

101. The worse thing that a parking enforcement officer can do is write an unethical

ticket.  The reason this is the worst thing is because of due process and constitutional

protections.  The people for whom the tickets are written are entitled to challenge the

ticket and a hearing is held in front of a judge.  At that hearing, the parking

enforcement officer is requires to attend and testify under oath.

102. Defendant, William Daley issued instructions to Plaintiffs that would have required

Plaintiffs to lie under oath had those tickets have been challenged.  Defendant,

William Daley showed no regard for the public policy implications that were

apparent in his illegal instructions to Plaintiffs.

103. One of many examples occurred when Defendant, William Daley informed monthly

renters that they could park for free in the Area A Atlantic Street Garage.   After

issuing this allowance, Defendant William Daley realized that the parking lot was

going to take a loss due to his instructions.  Accordingly, Defendant, William Daley

instructed Plaintiffs to ignore the allowance and begin ticketing the renters anyway.

104. This would have caused Plaintiffs to have to lie under oath because Plaintiffs are

required to affirm that the ticket was justified.

105. Defendant, William Daley also issued instructions to Plaintiffs asking Plaintiffs to do

things that were not even part of Plaintiffs job responsibilities.

106. All of this illegal, harassing, conduct began after Plaintiffs reported Defendant,

Wiliam Daley's sexual harassment and stalking behavior and continues to the

present.

107. Defendant, Jacalyn Hashmat was the Executive Secretary to Ted Ehrenberg, who

was the City Manager during the time period when the stalking and sexual

harassment was first reported.

108. Defendant, Jacalyn Hashmat has the authority to hire, fire, and change the terms and conditions of Plaintiffs' employment.

109. Defendant, Jacalyn Hashmat was present at a meeting when Plaintiffs reported Defendant, William Daley's illegal stalking activity.

110. Also present at that meeting was Plaintiff, Diana Casidy, Plaintiff, Douglas Salazar, Jon Squillace, Richard Poshkus, Captain Nicole Foley, Peter Busciglio, and Defendant, Jacalyn Hashmat.

111. During the meeting, Captain Nicole Foley informed all present that two police officers had reported Defendant, William Daley stalking activities.

112. At that meeting, Captain Nicole Foley stated that Defendant, William Daley's conduct was inappropriate for several reasons. Captain Foley stated that Defendant, William Daley should not be following Plaintiffs around, that he certainly should not be engaged in this type of activity in City vehicles, and that Defendant, William Daley's conduct was concerning.

113. Defendant, Jacalyn Hashmat did nothing to remediate this illegal conduct and Defendant, William Daley continued the harassment and abuse and retaliation. Defendant, William Daley's retaliatory conduct continued to the present.

114. Defendant, Jacalyn Hashmat's refusal to initiate steps in accordance with State laws that require investigative and remedial measures only worked to empower Defendants to continue the abusive, harassment, conduct.

115. Defendant, William Daley was protected at all times by Defendants to avoid consequences for the illegal conduct to which Plaintiffs have been subjected.

116. At all times Defendants have engaged in actions aimed to silencing the victims of

Defendant, William Daley's illegal activities including but not limited to the sexual

harassment and stalking.  By way of example only and by no means an exhaustive

list, Defendants have informed Plaintiffs that pursuing complaints and reports

implicating Defendants and Defendant, William Daley would be "detrimental to your

salary."

117. Defendants have engaged in conduct aimed to silencing Plaintiff, Diana Cassidy and

Plaintiff, Douglas Salazar.

118. Defendants informed Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar that

Plaintiffs salaries would be affected if Plaintiffs did not keep quiet.

119.  Defendants promised Plaintiff a raise in salary to an amount equal to others who

had received salary increases.  Defendants stated that if Plaintiffs expected the salary

increase Plaintiff had to keep quiet about Defendant, William Daley.  Plaintiffs did

not keep quiet about Defendant, William Daley and Plaintiffs were notified that they

would not be considered for any increase in salary.

120. Plaintiffs were promised a meeting in February 2022, however, Defendants keeping

true to their word, canceled the February 2022 meeting and refused to reschedule.

121.  Defendants have also taken action against Plaintiff, Douglas Salazar by taking away

Plaintiff, Salazar's two designated parking places.

122.  Parking for Parking Enforcement Officers goes by seniority.  Plaintiff, Douglas

Salazar has worked for the City of Hackensack as a Parking Enforcement Officer for

over twenty years.  There are Parking Enforcement Officers who worked for the City

of Hackensack for about six months who still have designated parking.

123.  Sometime around March 2022, Defendants overhead, Plaintiff, Douglas Salazar

talking about retaining legal representation.  That same week, Defendants informed
Plaintiff, Douglas Salazar that he would no longer be permitted to have designated
parking.  Both parking spots that Plaintiff, Douglas Salazar enjoyed for the past
twenty years were summarily taken away without any explanation.

124.  Plaintiff, Douglas Salazar asked Dean Mattalian, who is the current City
Compliance Officer, for an explanation, and Dean Mattalian threatened Plaintiff
stating that Plaintiff was being disrespectful.  Dean Mattalian said, "I can do
whatever I want.  I am in charge of the parking lot."

125.  Defendant, Dean Mattalian is a City employee who has been accused of sexual
harassment in his own right.

126.  Defendant, Dean Mattalian was reported for sexual harassment including following
a coworker around and making inappropriate statements.  Defendant, Dean Mattalian
was the subject of a sexual harassment lawsuit and Defendants protected Dean
Mattalian so thatDefendant, Dean Mattalian continues his employment today.

127.  Defendant, Dean Mattalian continue the policy of refusing to provide a twenty-year
veteran with his designated parking even today, while employees with far less
seniority continue to enjoy designated parking.

128.  Today, the parking places that were taken from Plaintiff, Douglas Salazar as part of
the campaign of retaliation remain empty.  Nobody even uses the parking places.

129.  Defendant, Dean Mattalian also subjects Plaintiff, Douglas Salazar to
discrimination and harassment in the workplace by using race-based insults to
address Mr. Salazar.

130.  By way of example, Defendant, Dean Mattalian refuses to call Douglas Salazar by

name.  Instead, Dean Mattalian has labeled Plaintiff, Douglas Salazar, "Dirty

Sanchez."

131.  Unfortunately, there is no way to communicate the extremely severe nature of this

race-based epithet without describing what is a Dirty Sanchez.

132.  Defendant, Dean Mattalian has called Plaintiff, Douglas Salazar a "Dirty Sanchez"

countless times in front of other employees who laugh at the racist insult.

133.  Plaintiff, Diana Cassidy witnessed this racist behavior demonstrated by Dean

Mattalian multiple times.

134.  Plaintiff, Diana Cassidy asked Dean Mattalian why Dean Mattalian  continued to

call Plaintiff, Douglas Salazar a "Dirty Sanchez."

135.  Defendant, Dean Mattalian responded by explaining the meaning of the race-based

insult.  Dean Mattalian said to Plaintiff, Diana Cassidy, "it is when a guy is fucking a

girl in the ass and gets poop on his finger and wipes it on his upper lip like a

mustache."

136.  Plaintiff, Diana Cassidy was disgusted and Defendant, Dean Mattalian continued to

call Plaintiff, Douglas Salazar a "Dirty Sanchez" thereafter.

137.  Defendant, Dean Mattalian has issued other threats to Plaintiff, Douglas Salazar and

Plaintiff, Diana Cassidy.  By way of example, Defendant, Dean Mattalian threatened

Plaintiffs stating, "you are lucky you are not parking in Area A garage."

138.  This is a threat because the Area A Parking Lot is a few blocks away from the

police department and would require Plaintiffs to park significantly further away

without a radio or other protection on a daily basis including in inclement weather.  It

would also require Plaintiffs to park within the same parking at the people who

Plaintiffs have to ticket, making Plaintiffs a clear target.

139.  Defendant, Dean Mattalian's harassment of Plaintiff, Diana Cassidy and Plaintiff, Douglas Salazar continued.  During the winter, Defendant, Dean Mattalian targeted Plaintiffs and instructing Plaintiffs that they were not permitted to wear warn cold-weather hats.

140. Defendant, Dean Mattalian stated only to Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar that they had to wear the official police hat, which is a hat that none of the Parking Enforcement Officers wear on duty.  This hat would have made it much more difficult to work because it offers little to no protection from the cold.

141.  Defendant, Dean Mattalian also issues insults to Plaintiffs.  By way of example, Defendant, Dean Mattalian said to Plaintiff, Diana Cassidy, "you look like a dirt bag umpire."

142.  Defendant, Dean Mattalian also subjected Plaintiff, Diana Cassidy to inappropriate advances.  By way of example, Defendant, Dean Mattalian said to Plaintiff, Diana Cassidy, "if you ever want to spend the night at my shore house, you can take the keys and go.  But don't tell anyone about it."

143.  Defendant, William Daley's job should not have even been to supervise Plaintiffs and the other Parking Enforcement Officers.  As a result of Defendants' conduct Plaintiff has been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

144. As a result of Defendants' conduct both Plaintiffs  were subjected to discriminatory treatment, and continues to suffer severe emotional distress and physical ailments.

145. Plaintiffs have been subjected to discriminatory conduct and both Plaintiffs have suffered emotional distress caused by Defendants discrimination, harassment and retaliation.

146.  Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, and Plaintiffs both demand Punitive Damages against all Defendants jointly and severally.

147. Defendants have established a pattern and practice of discrimination and harassment through their actions and retaliation which only got worse after Plaintiffs engaged in protected activity.

148. The discrimination and retaliation will continue beyond the date of this complaint, and as such, Plaintiff makes a claim for all continuing future harassment and retaliation.

149. The above are just some of the examples of unlawful and discriminatory conduct to which Plaintiffs were subjected.

150.  As a result of Defendants' conduct, Plaintiffs were caused to sustain serious and permanent personal injuries, including permanent psychological injuries and physical injuries.

151.  As a result of Defendants' conduct, both Plaintiffs have been humiliated, degraded, victimized, embarrassed and emotionally distressed.

152.  As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer a loss of income, a loss of salary, bonuses, benefits and other compensation, which such employment entails.  Plaintiffs have also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiffs have further experienced severe emotional and physical distress.

153.  Both Plaintiffs claim a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

154.  The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

**COUNT I**
**UNDER NEW JERSEY STATE LAW**
**DISCRIMINATION**
**(Plaintiff, Diana Cassidy and Douglas Salazar v. All Defendants)**

155. Plaintiffs both repeats and realleges each and every allegation made in the above paragraphs of this complaint.

156. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: " It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race . . , pregnancy, sex, disability . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

157. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

158. Plaintiffs both hereby makes a claim against Defendants under all of the applicable paragraphs of  New Jersey's Law against Discrimination.

159. Plaintiff's claims for discrimination and harassment in the workplace are based upon the disparate treatment and the hostile work environment to which Plaintiffs were subjected during their employment which continues to the present.

**COUNT II**
**UNDER NEW JERSEY STATE LAW**
**RETALIATION**
**(Plaintiff, Diana Cassidy and Douglas Salazar v. All Defendants)**

160. Plaintiffs both repeats and realleges each and every allegation made in the above paragraphs of this complaint.

161. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

162. Defendants violated this section as set forth herein.

163. Both Plaintiffs reported the discrimination and harassment in the workplace and therefore engaged in protected activity.

164. Upon and after reporting the discrimination and harassment in the workplace, Plaintiffs were subjected to a campaign of retaliation that included a ratcheting up of the hostile work environment and further adverse employment action as described above.

**COUNT III**
**UNDER NEW JERSEY STATE LAW**
**AIDING AND ABETTING**
**(Plaintiff, Diana Cassidy and Douglas Salazar v. Individually named Defendants)**

165. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint.

166. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

167. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

168. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

169. As such, Plaintiff has been damaged as set forth herein.

**COUNT IV**
**UNDER FEDERAL LAW**
**42 U.S.C. SECTION 1981**
**(Douglas Salazar v. All Defendants)**

168. Plaintiff, Douglas Salazar repeats and realleges each and every allegation made in the above paragraphs of this complaint.

169. 42 U.S.C. Section 1981 states in relevant part as follows:

   a. Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

170.   Plaintiff, because of his race was discriminated against by Defendants because of his race in violation of 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

171.   Plaintiff also claims unlawful retaliation under 42 U.S.C. Section 1981 for his opposition to Defendants' unlawful employment practices.

172.   Plaintiff, Douglas Salazar claims hostile work environment under 42 U.S.C. Section 1981.   The discrimination and harassment due to Plaintiff's race was severe and pervasive and interfered with Plaintiff's work environment.

173.   The discriminatory conduct was severe and pervasive both objectively and subjectively.

174.   Douglas Salazar also claims disparate treatment under 42 U.S.C. Section 1981.

175.   Plaintiff, Douglas Salazar was subjected to discrimination based on race which led to the adverse employment actions described herein.

176.   Defendants have no legitimate nondiscriminatory reason for the disparate treatment to which Douglas Salazar was subjected.

**COUNT V**
**42 U.S.C. §1983**
**VIOLATIONS OF EQUAL PROTECTION CLAUSE, FIRST, FOURTH, FIFTH AND**
**FOURTEETH AMENDMENTS AND STATUTES INCLUDING SECTION 1981 AND**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(against all named Defendants)**

177.  Plaintiffs Diana Cassidy and Douglas Salazar, hereby incorporates all allegations contained in the paragraphs above and repeats and realleges each and every allegation made in the above paragraphs of this complaint.

178.  42 U.S.C. Section 1983 stated:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

179.  Defendants and their employees and agents violated Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar's rights under the First, Fourth, Fifth, and Fourteenth amendments including violations of the equal protections clause and violations of Plaintiff's substantive rights.

180.  Defendants violated Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar's rights under Title VII of the Civil Rights Act of 1964.

181.  Defendants violated Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar's rights under Section 1981.

182.    Defendants acted under color of state law to violate the plaintiff's rights to equal protection and due process of law.

183.    Defendants' unlawful actions were done with the specific intent to deprive both Plaintiffs of their constitutional right to be free from unreasonable seizer and to enjoy equal protection under the laws.

184.    Defendants acting under color of state law acted to intentionally violate Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar's rights afforded by the United States Constitution and the rights afforded the laws derived from the rights afforded by the United States Constitution.

185.    Defendants also violated Plaintiff, Diana Cassidy and Plaintiff Douglas Salazar's rights under Title VII of the Civil Rights Act of 1964 through discrimination and retaliation for reporting said discrimination.

186.    Defendants are liable to Plaintiff for the damages caused by the violations of Plaintiff's rights as set forth in more detail below.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all compensatory damages, emotional distress and back pay and front pay,

punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and

disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**
Attorneys for Plaintiffs


By: _____/s/ Ian Bryson_____
    Ian Bryson
    1835 Market Street
    Suite 2950
    Philadelphia, Pennsylvania 19103
    (215) 391-4790
    *Attorney for Plaintiff, Diana Cassidy*
    *and Douglas Salazar*

DATED: April 27, 2022